EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, Arapahoe County, Colorado<br>7325 South Potomac Street<br>Centennial, CO 80112 | DATE FILED: October 16, 2023 2:45 PM<br>FILING ID: 533C86249D982<br>CASE NUMBER: 2023CV32011 |
| Plaintiff: REGINA GADERICK<br><br>v.<br><br>Defendants: LANDMARK RECOVERY OF COLORADO, LLC; and LANDMARK RECOVERY OF LOUISVILLE, LLC | ♦ COURT USE ONLY ♦ |
| Attorneys for Plaintiff:<br><br>Hunter A. Swain, No. 46697<br>SWAIN LAW, LLC<br>1490 North Lafayette Street, Suite 303<br>Denver, CO 80218<br>Telephone: (720) 815-5281<br>hunter@swainemploymentlaw.com<br><br>J. Bennett Lebsack, No. 45206<br>LOWREY PARADY LEBSACK, LLC<br>1490 North Lafayette Street, Suite 304<br>Denver, CO 80218<br>Telephone: (303) 593-2595<br>ben@lowrey-parady.com | Case No.:<br><br>Division: |

## COMPLAINT AND JURY DEMAND

Defendants Landmark Recovery of Colorado, LLC and Landmark Recovery of Louisville, LLC operate residential drug and alcohol addiction treatment programs. During an audit by the State of Colorado, an employee notified the auditor about Landmark Recovery's improper and insecure storage of Schedule III and IV controlled substances. Landmark Recovery failed the audit and terminated the employee at her next shift. For her complaint, Plaintiff Regina Gaderick alleges:

## JURISDICTION AND VENUE

1.      This action arises under the Constitution and laws of the State of Colorado.

2.      This Court has jurisdiction under C.R.S. § 13-1-124 because the events giving rise to the claims in this Complaint and Jury Demand all occurred within the State of Colorado and arise from Defendants' transaction of business within the State of Colorado.

3.      Venue lies in this Court under C.R.C.P. 98(c)(1) because Defendant Landmark Recovery of Colorado is a nonresident of the State of Colorado and can be found in the County of Arapahoe in the State of Colorado.

4.      Venue also lies in this Court under C.R.C.P. 98(c)(5) because the County of Arapahoe in the State of Colorado is where the tort alleged herein was committed.

## PARTIES

5.      Plaintiff Regina Gaderick ("Ms. Gaderick") is a Registered Nurse who was formerly employed at a Landmark Recovery addiction treatment center located at 2000 South Blackhawk Street, Aurora, CO 80014.

6.      Plaintiff is a resident of the County of Arapahoe in the State of Colorado.

7.      Defendant Landmark Recovery of Colorado, LLC is a Delaware limited liability company with its principal place of business in the State of Tennessee.

8.      Defendant Landmark Recovery of Colorado, LLC was registered as a business entity with the Colorado Secretary of State. Defendant Landmark Recovery of Colorado, LLC purposefully availed itself of the privilege of conducting business in Colorado and this Complaint arises out of the Defendant's contacts with Colorado.

9.      Defendant Landmark Recovery of Louisville, LLC is a Delaware limited liability company with its principal place of business in the State of Tennessee.

10.     Defendants Landmark Recovery of Colorado, LLC and Landmark Recovery of Louisville, LLC are collectively referred to as "Defendants Landmark Recovery."

11.     Defendant Landmark Recovery of Louisville, LLC currently owns, operates, and manages a collection of addiction treatment centers throughout the United States of America, including in Colorado, Connecticut, Florida, Indiana, Kentucky, Massachusetts,

Michigan, Nevada, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Virginia, and Wisconsin.

12.    Defendant Landmark Recovery of Louisville, LLC maintains a network of subsidiary business entities to manage and operate its business activities, and each such entity maintains interrelated operations, centralized control of labor relations, common management, and common ownership and financial control.

13.    Specifically, Defendant Landmark Recovery of Louisville, LLC serves as the "parent" business entity for numerous other limited liability companies across the country, including Defendant Landmark Recovery of Colorado, LLC.

14.    Upon information and belief, the primary operational function of Defendant Landmark Recovery of Louisville, LLC is to own and operate a single group of addiction treatment centers, including the treatment center nominally operated by Defendant Landmark Recovery of Colorado, LLC located at 2000 South Blackhawk Street, Aurora, CO 80014.

15.    Defendant Landmark Recovery of Louisville, LLC directs, manages, and controls the business activities of business entities for which it is the "parent," including Defendant Landmark Recovery of Colorado, LLC.

16.    Defendant Landmark Recovery of Louisville, LLC is a joint employer with and/or a single integrated enterprise that employs employees working at Defendant Landmark Recovery of Colorado, LLC.

17.    Defendant Landmark Recovery of Louisville, LLC and Defendant Landmark Recovery of Colorado, LLC share the same principal office street address and principal office mailing address, which is 720 Cool Springs Boulevard, Suite 500, Franklin, TN 37067.

18.    During Ms. Gaderick's employment, her paystubs bore the corporate address that the Defendants share in Tennessee rather than the address where she physically worked for the Defendants, which is in Aurora, Colorado.

19.    At the time of Ms. Gaderick's termination, Defendants provided her a termination letter that bore the corporate address that the Defendants share in Tennessee rather than the address where she physically worked for the Defendants, which is in Aurora, Colorado.

20.    Defendants both constituted Ms. Gaderick's "employer" because Defendants operate as a single integrated enterprise or otherwise function as a joint employer of all

employees of Landmark Recovery of Colorado, LLC. AJ Henry, Matthew DiGiacobbe, Jason Kirby, Justin Hartman, and H. Chris Kang are the corporate officers for each Defendant.

21.     Specifically, Defendant Landmark Recovery of Louisville, LLC operates a chain of communities and interrelated operations and both Defendants exercise centralized control of labor relations, have common management, and have common ownership and financial control.

22.     Upon information and belief, both Defendants have authority to and do hire and fire employees, supervise and control the work schedules and conditions of employees, determine the rate and method of pay, and/or maintain employee records.

## FACTUAL ALLEGATIONS

23.     Landmark Recovery operates residential treatment centers that provide alcohol and drug addiction treatment programs. As part of its admissions criteria, Landmark Recovery assesses patients for a documented history of current use of alcohol or drugs and significant functional impairments, including the ability to live without recurrent abuse of substances.

24.     Landmark Recovery maintains Schedule III controlled substances, like Suboxone, and Schedule IV controlled substances, like Ativan and Valium, on the premises of its residential treatment centers.

25.     Landmark Recovery is subject to regulation by the U.S. Drug Enforcement Administration ("DEA"). DEA regulations generally require "effective controls and procedures to guard against theft and diversion of controlled substances." 21 CFR § 1301.71(a). The regulations require Schedule III and IV controlled substances be stored in a safe or steel cabinet, a vault, a building with perimeter security, a steel cage, or other storage areas as approved by the DEA. 21 CFR § 1301.72(b) To be stored in a safe or steel cabinet, the safe or cabinet must meet certain standards, including being bolted or cemented to a floor or wall and equipped with an alarm system. 21 CFR § 1301.7(a)(1). Schedule III and IV controlled substances may be stored in a single-lock lockbox if that lockbox is stored in a drawer or cabinet that is also secured by key.

26.     Landmark Recovery is also subject to regulation by the Colorado Behavioral Health Administration ("CBHA"). CBHA regulations provides that "Medication shall be stored in a central location, including refrigerators, and shall be kept under lock and shall be stored in separate or compartmentalized packages, containers, or shelves for each individual in order to prevent intermingling of medication." 2 CCR 502-1 § 21.290.571(A)(6).

27.    Landmark Recovery operates Landmark Recovery of Denver, an alcohol and drug rehabilitation center located at 2000 South Blackhawk Street, Aurora, CO 80014.

28.    In July 2022, Defendants hired Gina Gaderick as a Registered Nurse at Landmark Recovery. As a Registered Nurse, Ms. Gaderick's licensure is subject to regulation by the Colorado Department of Regulatory Agencies ("DORA").

29.    Throughout Ms. Gaderick's employment, Landmark Recovery assigned her to report directly to Director of Nursing Angela Boateng. Ms. Boateng is a Registered Nurse whose licensure is subject to regulation by DORA.

30.    When Landmark Recovery hired Ms. Gaderick, it had recently opened the Aurora rehabilitation center and was preparing to admit patients.

31.    Ms. Gaderick's first day working at Landmark Recovery's Aurora rehabilitation center was July 11, 2022.

32.    Landmark Recovery assigned Ms. Gaderick to spend her first few days of employment training and helping the Aurora rehabilitation center prepare for the admission of its first patients.

33.    Landmark Recovery's Aurora rehabilitation center admitted its first patient on or about July 19, 2022, and Landmark Recovery assigned Ms. Gaderick her patient care duties the same day.

34.    At the time Landmark Recovery's Aurora rehabilitation center admitted its first patient, the facility was operating on a provisional license.

**Ms. Gaderick's Participation in the August 31, 2022 Audit.**

35.    On August 31, 2022, the Colorado Behavioral Health Administration ("CBHA") conducted an audit of Landmark Recovery's Aurora rehabilitation center.

36.    The CBHA auditor who conducted the August 31 audit was Ryan Mueller. Mueller did not physically tour the Aurora rehabilitation center, but instead appeared by video call.

37.    As part of CBHA's August 31 audit, Mueller reviewed Landmark Recovery's records and policies and toured the Aurora rehabilitation center.

38.     A Landmark Recovery management employee directed Ms. Gaderick to accompany Mueller on his tour of the Aurora rehabilitation center by carrying the laptop on which he appeared by video call to the nursing office. The management employee also instructed Ms. Gaderick to answer any questions Mueller had.

39.     Ms. Gaderick did so, and carried the laptop computer to the Aurora rehabilitation center's nursing office. The management employee joined Ms. Gaderick and Mueller.

40.     Mueller began the inspection of the nursing office by asking Ms. Gaderick who had keys to access the office.

41.     Mueller then asked Ms. Gaderick to show him the "crash cart" for use in medical emergencies, such as life-threatening withdrawal events.

42.     When Ms. Gaderick retrieved the cart out of the closet where Landmark Recovery had chosen to store it, Mueller asked her why the crash cart was stored in the closet and not in a hallway where it would be readily accessible in the case of an emergency.

43.     Mueller then asked Ms. Gaderick to show him the medication dispensation cart.

44.     Ms. Gaderick showed Mueller each of the various storage areas of the cart, starting with a locked drawer that contained a locked medication safe where controlled substance medications were supposed to be secured.

45.     Ms. Gaderick then opened the bottom drawer of the cart, revealing a large zip-tied bulk case of controlled-substance medications, including Ativan, Valium, and Suboxone.

46.     Ms. Gaderick stated to Mueller that it made her uncomfortable that Landmark Recovery did not keep the case of drugs double-locked.

47.     Landmark Recovery's practice of not double-locking the case of controlled-substance medications was concerning to Ms. Gaderick for two primary reasons.

48.     First, Ms. Gaderick was concerned that patients might be able to access the medications stored in the drawer while it was unlocked for medication dispensation or if a nurse left it unlocked by mistake. Given that Landmark Recovery's patients all struggle with addiction, Ms. Gaderick viewed the likelihood that a patient might attempt to divert the large of quantity of benzodiazepine medication was especially acute, creating an unacceptable risk of dangerous (or even life-threatening) overdoses. Thus, Ms. Gaderick viewed Landmark

Recovery's decision not to double-lock the medications as a deviation from accepted standards of care that posed a threat to the health and safety of the facility's patients.

49.    Second, Ms. Gaderick believed that storing controlled-substance medications that were not regularly counted in a single-locked drawer created a much higher risk of diversion by non-patients (such as other Landmark Recovery employees) as well.

**Landmark Recovery Failed the Audit and Terminated Ms. Gaderick's Employment.**

50.    Landmark Recovery failed the August 31, 2022 CBHA audit.

51.    On September 2, 2022, the CHBA issued a report which described the following violation identified by Mueller during the August 31 audit:

21.300.8 - HANDLING AND STORAGE
During virtual inspection of controlled substance storage facility, controlled substances were observed to be stored in a container with zip ties with quantities, dosages, and medications unknown. The agency reported that the medications in that box were managed by the pharmacy who delivered the medications and not the agency. Per BHA rule, it is the agency's responsibility to maintain responsibility for medications stored on-site which includes maintaining an accurate accounting/log of that medication at all times. The agency will need to provide action plan demonstrating how it will ensure appropriate medication accounting will be completed for existing controlled medications and incoming controlled medications, training staff to the new element, identifying quality assurance protocol to maintain future compliance, and ensure policy matches the change in operation.

52.    During Ms. Gaderick's next shift, on September 6, 2022, Landmark Recovery terminated Ms. Gaderick's employment.

53.    At the time of the time of her termination, Landmark Recovery provided Ms. Gaderick a termination letter signed by a human resources employee Sierra Lopez which stated that she was being terminated for "medication errors" and "not following nursing policies and practices."

54.    Ms. Gaderick asked Director of Nursing Angela Boateng about her termination. Ms. Boateng responded:

Hi Gina! There are things in your file such as med, lab, and documentation errors. However, personally I wanted to see how you handled a full house. So I was giving you

and the situation some time. The audit was the point of contention, based on your pointing out a problem.

55.    Landmark Recovery's claim that it terminated Ms. Gaderick for medication errors and not following nursing policies and procedures is false and pretext for retaliation.

## FIRST CLAIM FOR RELIEF:
(Wrongful Discharge in Violation of Public Policy)

1.    Plaintiff incorporates all allegations in this Complaint and Jury Demand into this First Claim for Relief.

2.    C.R.S. § 8-2-123(2)(a) provides that "[a] health care provider shall not take disciplinary action against a health care worker in retaliation for making a good faith report or disclosure" regarding patient safety information or quality of patient care.

3.    During her employment at Defendants, Ms. Gaderick made good faith reports or disclosures that Defendants were endangering patient safety and/or compromising the quality of patient care, including by failing to double-lock controlled substance medications.

4.    Ms. Gaderick made such good faith reports or disclosures regarding patient safety information or quality of patient care because she had a right and/or a responsibility to follow C.R.S. § 8-2-123 and to exercise her rights or privileges as a health care worker.

5.    Defendants were aware or reasonably should have been aware that Ms. Gaderick had a right and/or a responsibility to follow C.R.S. § 8-2-123 and to exercise her rights or privileges as a health care worker.

6.    Defendants retaliated against Ms. Gaderick because she because she followed C.R.S. § 8-2-123 and exercised her rights or privileges as a health care worker, including by terminating her employment.

7.    Defendants' conduct was willful and wanton and attended by circumstances of malice and reckless disregard for the rights of Ms. Gaderick.

8.    Defendants' unlawful acts toward Plaintiff have caused and continue to cause Plaintiff damages and injuries.

## PRAYER FOR RELIEF

Plaintiff Regina Gaderick respectfully requests that the Court assume jurisdiction; enter judgment against Defendant Landmark Recovery of Colorado, LLC and Landmark Recovery of Louisville, LLC; and order the following relief:

a.  Economic losses;

b.  All damages and remedies available for non-economic loss;

c.  Pre-judgment and post-judgment interest at the highest lawful rate;

d.  All other relief available at law; and

e.  Any other relief the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 16th day of October 2023 by:

SWAIN LAW, LLC                              LOWREY PARADY LEBSACK, LLC

s/ Hunter A. Swain                          s/ J. Bennett Lebsack
Hunter A. Swain, No. 46697                  J. Bennett Lebsack, No. 45206
1490 N. Lafayette St., Ste. 303             1490 N. Lafayette St., Ste. 304
Denver, CO 80218                            Denver, CO 80218
Telephone: (720) 815-5281                   Telephone: (303) 593-2595
hunter@swainemploymentlaw.com               ben@lowrey-parady.com

Attorney for Plaintiff                      Attorney for Plaintiff